# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | CRIMINAL NO. 23- |
| v. | : | DATE FILED: February 28, 2023 |
| GARRY SALTER | : | VIOLATION: 18 U.S.C. § 201(c)(1)(B) (acceptance of gratuities by public official– 1 count) |
| | : | |

## INFORMATION

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

**The Veterans Health Administration Program**

1. The United States Department of Veterans Affairs ("VA") was a cabinet-level department of the United States government with a mission to care for United States military veterans and their dependents.

2. The VA included the Veterans Health Administration ("VHA"), a federally-funded program that provided free or below-cost health care benefits, including hospital benefits to over nine million United States veterans, providing care at over 1,200 health facilities, including 170 medical centers ("VAMCs"). The United States Executive in Charge, Office of the Under Secretary for Health, directed the VHA system.

**Procurement of Services and Supplies for VAMCs**

3. The VHA ordered services and supplies for its VAMCs based on requests or physical assessments through contracts and purchase orders.

4. Procurement of services and supplies for VAMCs through the solicitation and award of contracts, as well as management of awarded contracts, were guided by the Federal Acquisition Regulations ("FARs') and Veterans Affairs Acquisition Regulations ("VAARs").

5. For purchase orders for goods and services at VAMCs, the procurement and management process was as follows:

a. VAMCs ordered supplies for its Services (departments within a VAMC) through specially-trained employees, typically part of the Logistics Service or other service within the VAMC, and those employees initiated orders for supplies based on requests from the VAMC Services made through a Form 2237.

b. After a particular supply order was initiated through a Form 2237 and approved, the employee assigned the Form 2237 to a government purchase cardholder who created a Purchase Order, with the Form 2237 attached, and placed the order with a vendor.

(1) The simplified acquisition methods promulgated in the FARs and VAARs authorized government-wide commercial purchase cards (credit cards) for making and/or paying purchase of supplies, services or construction.

(2) These government-wide commercial purchase cards could be used to make micro-purchases up to $10,000 per transaction.

(3) US Bank provided the VA with Visa credit cards, which authorized a cardholder to buy goods and services under an established delegation of authority.

(4) VA employees received periodic training covering permissible use of the purchase cards.

2

(5) The purchase card was specifically designed showing the United States of America seal and bearing the words "For official US Government Purchases Only."

(6) The purchase card payment process involved numerous electronic financial transactions between multiple financial institutions across the United States, including the vendor's credit card processor, US Bank, the United States Treasury, and the vendor's s bank account.

c. As part of the purchase cardholder's responsibility, he or she was trained in and required to follow Federal Acquisition Regulations and VA Acquisition Regulations, which detailed how orders were to be sourced.

d. As part of this process, the employee determined whether the supplies requested were on contract with a specific vendor or should be procured via Service-Disabled Veteran Owned Small Businesses or other delineated sources.

e. VA employees placing orders were directed to use required sources before going to the "open market" to make purchases, were required to conduct market research and document why an "open market" vendor was being used rather than a required source, and were required to determine the market rate for the items in order to ensure that the government does not over-pay for open market items.

f. When an order was received at the VAMC warehouse, another employee opened the package, checked the invoice against the Purchas Order, entered the items as delivered in a database, and delivered the items to the ordering Service.

g. The purchase cardholder was responsible for tracking that the order was delivered and for reconciling his or her credit card charge against the invoice and bank statement each month.

## Defendant GARRY SALTER

6. The Corporal Michael J. Crescenz VAMC ("Philadelphia VAMC"), located at 3900 Woodland Avenue, Philadelphia, Pennsylvania, provided health care services to United States veterans in southeastern Pennsylvania and southern New Jersey and was part of Veterans Integrated Service Network 4 ("VISN 4"), a network of nine VAMC campuses, 45 outpatient clinics and 17 veteran centers in: Altoona, PA; Butler, PA; Coatesville, PA; Erie, PA; Lebanon, PA; Pittsburgh, PA; Philadelphia, PA; Wilkes-Barre, PA; and Wilmington, DE.

7. One of the services or departments at Philadelphia VAMC was Environmental Management Services ("EMS"), which was responsible for a range of sanitation, waste removal, matting, and linen and uniform services for Philadelphia VAMC.

8. Defendant GARRY SALTER was a supervisor and a purchase cardholder with Philadelphia VAMC.

9. Some of defendant GARRY SALTER's responsibilities were to place orders, using his purchase card, for supplies requested by the Philadelphia VAMC warehouse, ensure that the supplies ordered were received, and to reconcile payments for those orders.

10. Defendant GARRY SALTER was authorized to make purchases of up to $3,500 per vendor per day with his purchase card.

4

**Company A and D.D.**

11. From at least on or about January 2015 through on or about November 2020, Company A, known to the United States Attorney, was an industrial supply company based in Philadelphia, Pennsylvania.

12. From at least on or about January 2015 through on or about November 2020, D.D., known to the United States Attorney, was an owner of Company A.

13. From on or about January 2015 through on or about November 2020, the Philadelphia VAMC EMS made purchases, via purchase orders, totaling more than $3,000,000, from Company A.

14. From on or about January 2, 2015, to on or about November 4, 2020, defendant GARRY SALTER placed purchase orders for the Philadelphia VAMC EMS, totaling approximately $1,651,800, with Company A; approximately $817,904 of those purchases orders were placed between on or about March 13, 2018 to on or about November 4, 2020.

**Cash Payments to defendant GARRY SALTER from D.D.**

15. From in or about March 2018 to in or about December 2019, D.D. made cash payments, ranging from approximately $5,000 to approximately $8,100 and totaling more than $28,000, to defendant GARRY SALTER to reward him for the purchases that defendant SALTER made from Company A for the Philadelphia VAMC EMS.

5

16. Between in or about March 2018 and in or about December 2019, in the Eastern District of Pennsylvania, defendant

**GARRY SALTER,**

a public official, otherwise than as provided by law for the proper discharge of official duties, accepted and agreed to accept something of value personally for and because of official acts performed and to be performed by defendant SALTER, that is, accepting cash in amounts ranging from $4,000 to $8,100 per occasion, and totaling more than $28,000, from D.D. to reward defendant SALTER for making purchases from Company A.

In violation of Title 18, United States Code, Section 201(c)(1)(B).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 201(c), set forth in this information, defendant

**GARRY SALTER**

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of the due diligence;

    b. has been transferred to or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in valued; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

7

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C).

_____
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

v.

GARRY SALTER

INFORMATION

18 U.S.C. § 201(c)(1)(B) (acceptance of gratuities by public official – 1 count)

A true bill.

_____
Foreperson

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INFORMATION

DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:   615 Chestnut Street, Suite 1250, Philadelphia, PA 19106-4476

Post Office:  Philadelphia            County:  Philadelphia

City and State of Defendant:   Glenolden, Pennsylvania

County:  Delaware         Register number:  N/A

Place of accident, incident, or transaction:      Eastern District of Pennsylvania

Post Office: Philadelphia            County:   Philadelphia
RELATED CASE, IF ANY:

Criminal cases are deemed related when the answer to the following question is "yes".

> Does this case involve a defendant or defendants alleged to have participated in the same action or transaction, or in the same series of acts or transactions, constituting an offense or offenses?
>
> YES/NO: No
>
> Case Number:  N/A            Judge: N/A

CRIMINAL:   (Criminal Category - FOR USE BY U.S. ATTORNEY ONLY)

1. ☐ Antitrust
2. ☐ Income Tax and other Tax Prosecutions
3. ☐ Commercial Mail Fraud
4. ☐ Controlled Substances
5. ☐ Violations of 18 U.S.C. Chapters 95 and 96 (Sections 1951-55 and 1961-68) and Mail Fraud other than commercial
6. ● General Criminal

(U.S. ATTORNEY WILL PLEASE DESIGNATE PARTICULAR CRIME AND STATUTE CHARGED TO BE VIOLATED AND STATE ANY PREVIOUS CRIMINAL NUMBER FOR SPEEDY TRIAL ACT TRACKING PURPOSES)

18 U.S.C. § 201(c)(1) (B) (acceptance of gratuities by public official – 1 count)

DATE:   2/28/23            /s/ K.T. NEWTON
                            K.T. Newton
                            Assistant United States Attorney

File No. 2021R00220
U.S. v. Garry Salter